Signed: December 15, 2008

_____
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                           No. 08-43740 TG
                                                Chapter 13
FELICIA LAURA COLLIER,

         Debtor.
_____/

In re                                           No. 08-44842 TG
                                                Chapter 13
WILLIE JACKSON,

         Debtor.
_____/

**NOTICE TO CALIFORNIA ATTORNEY GENERAL**

Section 2403(b) of Title 28 of the United States Code provides that, when the constitutionality of a state statute is called into question in a proceeding in federal court, the court shall certify such fact to the attorney general of the State and shall permit the state to intervene. The Court has tentatively concluded that Cal. Rev. & Tax. Code § 4103(b) is unconstitutional as applied to bankruptcy debtors. Therefore, it hereby gives notice to the California Attorney General of this opinion and gives the California Attorney General 60 days from the date of this tentative decision to

indicate its desire to intervene.  If not such indication has been received within 60 days, the decision will become final.

**MEMORANDUM OF DECISION**

In each of the above-captioned chapter 13 cases, Donald R. White, the Treasurer-Tax Collector of Alameda County, ("Alameda County") objected to confirmation of the debtor's plan on the ground that it failed to provide for payment of interest on its secured property tax claim at the rate of 18% per annum pursuant to 11 U.S.C. § 511(a) and Cal. Rev. & Tax. Code § 4103(b).  The debtors contended, among other things, that § 4103(b) is unconstitutional because it violates the Supremacy Clause of the United States Constitution. U.S. Const. Art. VI, § 8.  The Court agrees.  The reasons for the Court's decision are set forth below.  The memorandum also sets forth the Court's conclusions with respect to Alameda County's alternative arguments.

**SUMMARY OF FACTS**

Felicia Laura Collier ("Collier") filed a petition seeking relief under chapter 13 of the Bankruptcy Code on July 17, 2008.  On August 28, 2008, she filed a first amended chapter 13 plan.  The plan sets forth a secured property tax claim owing to Alameda County in the amount of $15,000 and provides for an interest rate on the claim of zero percent.  Alameda County filed an objection to confirmation on September 8, 2008.  Alameda County filed a proof of claim on October 31, 2008, listing the following amounts due:

(1) taxes and assessments totaling $15,349.69;

2

(2) delinquent penalties totaling $1,534.94 (calculated as 10% of the taxes);

(3) costs totaling $30; and

(4) pre-petition redemption penalties through July 31, 2008 totaling $2,379.29.

The proof of claim also asserted a claim for post-petition redemption penalties at the rate of 18% per annum.

Willie Jackson ("Jackson") filed a petition seeking relief under chapter 13 of the Bankruptcy Code on September 2, 2008. On November 8, 2008, he filed a third amended chapter 13 plan. The plan sets forth two secured property tax claims owing to Alameda County: i.e., one with respect to real property located on Martin Luther King Boulevard (the "MLK Boulevard Property") and one with respect to real property located on 38th Avenue (the "38th Avenue Property"). The Jackson Plan provides for an interest rate on both claims of 10% per annum.

Alameda County filed an objection to confirmation of the Jackson Plan on November 12, 2008. On November 4, 2008, it filed three proofs of claim in the Jackson case, one of which reflected property tax due for a third piece of real property located on Penniman Avenue (the "Penniman Avenue Property") not listed in the debtor's plan. The proofs of claim listed the following amounts due:

**MLK Boulevard Property**

(1) taxes and assessments totaling $9,447.20;

(2) delinquent penalties totaling $944.70 (calculated as 10% of the taxes);

3

(3) costs totaling $20; and

(4) pre-petition redemption penalties through September 30, 2008 totaling $1,272.81.[1]

**38th Avenue Property**

(1) taxes and assessments totaling $48,016.52;

(2) delinquent penalties totaling $4,801.30 (calculated as 10% of the taxes);

(3) costs totaling $70; and

(4) pre-petition redemption penalties through September 30, 2008 totaling $15,622.06.

**Penniman Avenue Property**

(1) taxes and assessments totaling $3,218.60;

(2) delinquent penalties totaling $321.86 (calculated as 10% of the taxes);

(3) costs totaling $20; and

(4) pre-petition redemption penalties through September 30, 2008 totaling $96.26.

The proof of claim also asserted a claim for post-petition redemption penalties at the rate of 18% per annum.

## DISCUSSION

**A.   SUMMARY OF THE ISSUES AND ARGUMENTS**

When a chapter 13 plan proposes to pay the delinquent amount of a secured claim over time, 11 U.S.C. § 1325(a)(5)(B)(ii) requires the

---

[1] Although § 4103(b) states that the 18% per annum charged should be considered interest when the taxpayer is a bankruptcy debtor, Alameda County's proofs of claim continue to refer to the charge as a penalty.

4

amount paid to equal the present value of the claim as of the effective date of the plan. See 11 U.S.C. § 1325(a)(5)(B)(ii). Normally, this requires that interest be paid on the claim at the market rate. However, 11 U.S.C. § 511(a) provides that, when a secured tax claim is involved, the rate of interest is determined by applicable nonbankruptcy law.[2]

Section 4103(a) of the California Revenue and Taxation Code ("Cal. Rev. & Tax. Code") provides that, when a real property owner fails to pay its real property taxes when due, a redemption penalty of 18% per annum accrues. However, Section 4103(b) provides that:

> For purposes of an administrative hearing or any claim in a bankruptcy proceeding pertaining to the property being redeemed, the assessment of penalties determined pursuant to subdivision (a) with respect to the redemption of that property constitutes the assessment of interest.

Cal. Rev. & Tax. Code § 4103(b).

Alameda County objected to the Collier and Jackson plans on the ground that they fail to provide for payment of interest on its claims at the rate of 18% per annum as required by 11 U.S.C. § 511. Alternatively, Alameda County argued that, if the Court concludes that the 18% per annum charge is not interest, the charge should be considered part of the tax claim like the 10% delinquency penalty that accrues when the tax is not paid when due. See Cal. Rev. & Tax

---

[2] Section 511(a) of the Bankruptcy Code states as follows: "If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law." 11 U.S.C. § 511(a).

5

Code §§ 2617 & 2618; <u>Rickley v. County of Los Angeles</u>, 114 Cal. App. 4th 1002, 1011 (2004). Finally, Alameda County asserted that the post-petition penalties may be recovered as part of its secured claim based on 11 U.S.C. § 506(b).

The debtors' only meaningful argument challenging the County's position is that Cal. Rev. & Tax. Code § 4103(b) is unconstitutional as in violation of the United States Constitution and that it is preempted by the Bankruptcy Code. They do not address Alameda County's two alternative contentions.

All three issues are addressed below.

**B. DECISION**

    **1. Is Cal. Rev. & Tax Code § 4103(b) Preempted by the Supremacy Clause?**

The first issue to be addressed is whether Cal. Rev. & Tax. Code § 4103(b), as applied to a debtor in a bankruptcy case, is preempted by the Bankruptcy Code. The Court concludes that it is. Thus, § 4103(b) is a nullity as applied to Collier and Jackson. The basis for the Court's decision is set forth below.

Section 511(a) of the Bankruptcy Code provides that, in a chapter 13 case, when a tax claim is to be paid over the life of the plan, the tax claim must receive interest at the rate provided by state law. Section 4103(b) of the California Revenue and Taxation Code states that, when the taxpayer is in bankruptcy, the 18% per annum charge assessed on delinquent property taxes shall be deemed interest.

The question is whether Congress's intent in enacting § 511(a) was to permit states to enact a bankruptcy specific interest rate or merely to subject bankruptcy debtors to the same interest rate imposed on nonbankruptcy debtors under state law. The Court concludes that Congress intended the latter, not the former. As a result, it concludes that § 4103(b) violates the Supremacy Clause of the United States Constitution and is a nullity as applied to bankruptcy debtors.[3]

The Supreme Court has described the doctrine of federal preemption as follows:

> The pre-emption doctrine, which has its roots in the Supremacy Clause, U.S. Const., art. VI. cl. 2, requires us to examine congressional intent. Pre-emption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by federal law and the character of the obligations imposed by it may reveal the same purpose."

---

[3] Section 4103(b) also applies to taxpayers not in bankruptcy who are the subjects of an administrative proceeding. The Court does not view the inclusion of these nondebtors in this subsection as sufficient to render the provision constitutional as applied to bankruptcy debtors.

7

MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 913 (9th Cir. 1996), quoting from Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152-53 (1982). The MSR Exploration court stated that:

> ...a mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code...demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike.

Id. at 914.

However, as stated in Sherwood Partners, Inc. V. Lycos, Inc.:

> At the same time, federal law coexists peaceably with, and often expressly incorporates, state laws regulating the rights and obligations of debtors...and creditors. In determining whether...[a specific state statute] is preempted, we must consider whether it is merely another creditor rights provision of the kind that is tolerated by the Bankruptcy Code, or whether it gives the state...powers that are within the heartland of bankruptcy administration."

394 F.3d 1198, 1201 (9th Cir. 2005).

In Sherwood Partners, the Ninth Circuit concluded that Cal. Civ. Proc. Code § 1800, which gives an assignee for the benefit of creditors the power to recover a preferential transfer, was preempted by the Bankruptcy Code. Sherwood Partners, the assignee, contended that § 1800 was not only tolerated by the Bankruptcy Code but specifically incorporated through 11 U.S.C. § 544(b). Section 544(b) permits a trustee to avoid a transfer that could be avoided by unsecured creditors under state law. The Sherwood Partners court found this argument unpersuasive, noting that § 1800 did not give the

8

power to recover preferences to creditors in general, only to an assignee for the benefit of creditors. Thus, it did not come within the provisions of 11 U.S.C. § 544(b). Id. at 1201-02.

The Sherwood Partners court then addressed the question of whether, although not expressly incorporated by the Bankruptcy Code, § 1800 could peaceably coexist with it. Id. at 1202. The court concluded that it could not. It observed that one of the major goals of bankruptcy was the equitable distribution of the debtor's nonexempt assets and that the power to avoid preferences was one of the major powers in accomplishing that goal. If an assignee for the benefit of creditors could recover a preference, it would prevent a bankruptcy trustee from doing so since a preference may only be recovered once. Id.

Similarly, in a case decided under the Bankruptcy Act, the Ninth Circuit found unconstitutional a California statute purporting to exempt a personal injury action from the claimant's bankruptcy estate. See In re Kanter, 505 F.2d 228, 230-31 (9th Cir. 1974). At that time, a debtor's bankruptcy exemptions were those exemptions provided to judgment debtors in general under state law. However, the California statute in question purported to render a personal injury action exempt from a bankruptcy trustee but not with respect to judgment creditors outside a bankruptcy case. The Kanter court concluded that, by giving states the power to define a debtor's exempt property, Congress did not intend to give states "a free hand to circumscribe the powers of the bankruptcy trustee." Id. at 230.

9

Finally, a number of cases, many in recent years, have addressed the constitutionality of exemption schemes enacted by states which are applicable only to bankruptcy debtors.[4] The decisions on whether such schemes are constitutional are split. See In re Morrell, 394 B.R. 405, 414, n. 5 (Bankr. N.D. W.Va. 2008)(citing cases on issue).

Having considered the issue and the authorities cited above, in particular, Kanter, the Court concludes that Cal. Rev. & Tax. Code § 4103(b) is preempted by the Bankruptcy Code and may not be applied to a bankruptcy debtor. Congress' intent in enacting 11 U.S.C. § 511(a) was clearly to prevent any distinction made between bankruptcy and nonbankruptcy debtors with respect to the interest rate imposed on delinquent tax claims. The thrust of § 4103(b) is directly opposed to that intent: i.e., it creates a distinction between the two types of taxpayers.

**2. Is Delinquent Penalty Part of the Tax?**

Alameda County's second contention was that, even if the 18% annum charge (i.e., the redemption penalty) is a penalty, not interest, it is part of the tax as is the 10% delinquent penalty. As noted above, in support of this contention, Alameda County cited Rickley and the cases cited therein.

In Rickley, a real property owner wished to contest the legitimacy of the property tax. Applicable law required the "tax" to be paid in order to challenge the legitimacy of the tax. 114 Cal.

---

[4] See In re Lennen, 71 B.R. 80, 81-82 (Bankr. N.D. Cal. 1987) for an accurate description of the reason for the enactment of these state law exemptions schemes.

10

App. 4th at 1010; see Cal. Const. Art. XIII, § 32. The property owner had paid the principal amount of the tax but not the delinquent or redemption penalties. The issue was whether the penalties were part of the "tax" that had to be paid to challenge the legitimacy of the tax. Id. at 1009-10.

The Rickley court held that both types of penalties had to be paid. It noted that §§ 2617 and 2618 state that, if the two installments of property tax are not paid by the deadline, the delinquent penalty "attaches" to the tax. Id. at 1011. Section 4103(a) also uses the word "attach" with respect to redemption penalties. See Cal. Rev. & Tax. Code §§ 2618 & 4103. However, the debtors do not dispute that the delinquent penalties or pre-petition redemption penalties are part of the tax that they owe to Alameda County. They merely dispute that the redemption penalties continue to accrue post-petition.

The debtors cite no authority for their contention that redemption penalties on unpaid real property tax do not accrue post-petition. The Court is unaware of any such authority. Section 502(b)(2) of the Bankruptcy Code provides that claims for post-petition interest may be disallowed. There is no comparable provision for post-petition penalties. Thus, the Court concludes that the redemption penalties provided for by § 4103(a) do continue to accrue post-petition until the plan has been fully performed and the debtor has received a discharge.

The more significant question is what payment on the claim must be made by the debtors. The answer to this question depends on

11

whether or not the redemption penalties are part of Alameda County's secured claim. This issue is addressed in the next section.

### 3. Are Redemption Penalties Allowable as Part of Alameda County's Secured Claim Allowable Pursuant to 11 U.S.C. § 506(b)?

Alameda County contended that the post-petition redemption penalties may be recovered as part of its secured claim pursuant to 11 U.S.C. § 506(b). Section 506(b) states as follows:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). The Court finds this contention without merit. The Court bases this conclusion on In re County of Orange, 262 F.3d 1014 (9th Cir. 2001)("Orange County").

In Orange County, the Federal Deposit Insurance Corporation (the "FDIC"), as receiver for various failed financial institutions, filed proofs of claim for delinquent real property tax penalties paid under protest. It contended that 12 U.S.C. § 1852(b) shielded it from liability for the delinquent penalties, both those that accrued before it took over as receiver and those that accrued thereafter. Section 1852(b)(2) and (3) state that:

> When acting as a receiver...
> (2) No property of the...[FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the ...[FDIC], nor shall any involuntary lien attach to the property of the...[FDIC].
> (3) The...[FDIC] shall not be liable for any amounts

12

> in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due."

12 U.S.C. § 1852(b)(2),(3).

The Ninth Circuit held that the FDIC took the real property in question subject to the encumbrances for the delinquent penalties that had accrued before it became receiver for the institution in question. However, it held that the FDIC was entitled to reimbursement for the redemption penalties paid, both those that accrued before and those that accrued after it became receiver because these redemption penalties did not constitute part of the lien on the real property. Orange County, 262 F.3d at 1018. It based this holding on Weston Inv. Co. v. California, 31 Cal. 2d 390 (1948), in which the California Supreme Court held that redemption penalties do not become "part of the tax obligation to be secured by the lien." Id. at 1021-22; see also Ferreira v. El Dorado County, 222 Cal. App. 3d 788 (1990).

As a result, although the Court concludes that Alameda County's redemption penalties continue to accrue post-petition, it concludes that they constitute a general, unsecured claim as do the redemption penalties that accrued pre-petition. As such, Alameda County is entitled to receive its pro rata share of any payments made by the debtors to general, unsecured creditors on account of these redemption penalties. Since there is no exception to discharge in chapter 13 with respect to such claims, see 11 U.S.C. § 1328, if the

plans are fully performed, the debtors will receive a discharge with respect to any remaining balance of these penalties.

## CONCLUSION

Section 4103(b) of the California Revenue and Taxation Code is preempted by the Bankruptcy Code and is a nullity as applied to a debtor in a bankruptcy case. Although Alameda County is entitled to interest on its secured claim, including both the underlying tax itself, plus costs and the delinquent penalty, it is not entitled to interest at 18% per annum absent evidence. The statutory rate should apply.

The debtor is thus subject to § 4103(a) which provides for a delinquent penalty on any unpaid property tax at the rate of 18% per annum. The penalty continues to accrue post-petition. However, it is not part of Alameda County's secured claim and is entitled to receive only its pro rata share of any amounts paid to the general, unsecured creditors.

END OF DOCUMENT

```
                        COURT SERVICE LIST

Office of the Attorney General
1300 "I" St.
P.O. Box 944255
Sacramento, CA 94244-2550

Claude F. Kolm
Deputy County Counsel
Office of County Counsel, County of Alameda
1221 Oak St., Ste. 450
Oakland, CA 94612

Max Cline
Law Offices of Max Cline
1300 Clay St.
Oakland, CA 94612

David Ashley Smyth
Smyth Law Offices
1990 N California Blvd. #830
Walnut Creek, CA 94596

Martha G. Bronitsky
P.O. Box 5004
Hayward, CA 94540-5004
```